UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WILLIAM SCHAPPELL, | | |
| | Plaintiff, | |
| v. | | CIV S-05-0219 GEB PAN |
| PANTHEON HOLDINGS, INC.,<br>and DOES 1 through 50, | | <u>FINDINGS AND RECOMMENDATIONS</u> |
| | Defendants. | |

Plaintiff moves for default judgment against defendant Pantheon Holdings, Inc., pursuant to Fed. R. Civ. P. 55(b)(2). The hearing on this matter, scheduled for August 1, 2005, was vacated for decision on the record. E. D. Cal. L. R. 78-230(h). Plaintiff twice filed supplemental briefing as directed by the court. Upon review of the file and motion with all supporting documents, and good cause appearing therefor, THE COURT MAKES THE FOLLOWING FINDINGS AND RECOMMENDATIONS:

Plaintiff filed this diversity action[1] February 2, 2005, for breach of contract and fraud, alleging that defendant failed to comply with state law governing "seller assisted marketing plan" transactions and failed to deliver purchased goods or return plaintiff's full payment.

---

[1] Plaintiff also asserts generally this action presents issues "regulated by the Federal Trade Commission, 16 C.F.R. Part 436, 15 U.S.C. 41 et seq." Complaint, at p. 2. However, the citation is not on point and plaintiff has failed to develop this federal claim. Accordingly, judgment is recommended based upon state law only.

Defendant was timely served process[2] but has not appeared in this action. The Clerk of Court entered defendant's default on May 20, 2005. Fed. R. Civ. P. 55(a).

Entry of default effects an admission of all well-pleaded allegations of the complaint by the defaulted party. Fed. R. Civ. P. 8(d); Geddes v. United Financial Group, 559 F.2d 557 (9th Cir. 1977). The complaint and the affidavits filed in support of this motion support the finding plaintiff is entitled to the relief requested in the prayer for default judgment, which does not differ in kind from the relief requested in the complaint. Henry v. Sneiders, 490 F.2d 315, 317 (9th Cir.), cert. denied, 419 U.S. 832 (1974).

Accordingly, defendant admits the following facts. Defendant entered into a written franchise agreement with plaintiff on June 24, 2004, to sell plaintiff five "EZ Link Terminals" for a total of $77,400.00. Defendant advertizes its "EZ LINK terminals" as "sophisticated interactive terminals" that provide internet access to the public for a fee. Defendant agreed to find installation locations for the terminals, install the terminals and provide technical assistance for their initial operation. Plaintiff agreed to "receive 50 reference calls . . . after [his] investment [was] recovered." The contract credited plaintiff $5000.00 for his agreement to receive reference calls and $1000.00 for a warranty that was "included." On June 24, plaintiff paid a deposit of $7000.00, and on June 30, plaintiff paid the balance of the purchase price minus the credits, for a total amount of $71,400.00. On August 9, plaintiff sent defendant a certified letter demanding cancellation of the purchase order and return of his money. Defendant did not respond to plaintiff's demand.

Plaintiff seeks damages in the amount of $71,400.00 plus interest, costs and attorney fees.

California law supports plaintiff's claim for relief. The California Civil Code defines a "seller assisted marketing plan" (SAMP) as follows (Cal. Civ. Code § 1812.201(a)):

> "Seller assisted marketing plan" means any sale or lease or offer to sell or lease any product, equipment, supplies, or services that

---

[2] Defendant's registered agent was personally served in Florida on February 28, 2005. See Proof of Service filed March 28, 2005.

requires a total initial payment exceeding five hundred dollars ($500), but requires an initial cash payment of less than fifty thousand dollars ($50,000), that will aid a purchaser or will be used by or on behalf of the purchaser in connection with or incidental to beginning, maintaining, or operating a business when the seller assisted marketing plan seller has advertised or in any other manner solicited the purchase or lease of the seller assisted marketing plan and done any of the following acts:

(1) Represented that the purchaser will earn, is likely to earn, or can earn an amount in excess of the initial payment paid by the purchaser for participation in the seller assisted marketing plan.

(2) Represented that there is a market for the product, equipment, supplies, or services, or any product marketed by the user of the product, equipment, supplies, or services sold or leased or offered for sale or lease to the purchaser by the seller, or anything, be it tangible or intangible, made, produced, fabricated, grown, bred, modified, or developed by the purchaser using, in whole or in part, the product, supplies, equipment, or services that were sold or leased or offered for sale or lease to the purchaser by the seller assisted marketing plan seller.

(3) Represented that the seller will buy back or is likely to buy back any product made, produced, fabricated, grown, or bred by the purchaser using, in whole or in part, the product, supplies, equipment, or services that were initially sold or leased or offered for sale or lease to the purchaser by the seller assisted marketing plan seller.

The "SAMP Act" seeks "to prohibit or restrict unfair contract terms," Cal. Civ. Code § 1812.200(b), and puts a cap on the amount a seller may require as downpayment prior to delivery. A seller may receive as downpayment no more than 20% of the "initial payment" unless the excess amount is placed in an escrow account pending the purchaser's written notification of delivery. Cal. Civ. Code § 1812.210(b). The "initial payment" is defined as the total sales price, including both the downpayment (or "initial cash payment") and the balance due upon delivery. Cal. Civ. Code § 1812.201(k), (l).

The parties' contract consists of a one-page "Pantheon Holdings, Inc. Purchase Order" and a four-page "California Contract/Agreement." The "California Contract/Agreement" provides, consistent with state law, that "[u]nder no circumstances will the Seller receive more than twenty percent (20%) of the initial payment before delivery to Purchaser of the equipment . .

. the remainder is due upon delivery payable by certified or cashier check." See Exhibit 1 to Declaration in Support of Application for Entry of Default Judgment ("Exhibit 1"), at para. 11. However, the "Pantheon Holdings, Inc. Purchase Order," with which plaintiff complied, provides that the "total amount [is] due prior to shipment." Id., at p. 1.  Neither portion of the contract informed plaintiff of defendant's obligation under California law to place in escrow, until delivery of the terminals, any payment in excess of 20% of the total sales price.  Cal. Civ. Code §§ 1812.209, 1812.210(b), 1812.201(k), 1812.214(c).  Moreover, although the parties agreed the contract would be "voidable by the purchaser" within one year "if the contract does not comply with the requirements of this title [Cal. Civ. Code § 1812.200 et seq.]," (Exhibit 1, at para. 12, setting forth language of Cal. Civ. Code § 1812.215), defendant has ignored plaintiff's attempts to void the contract and obtain reimbursement.

While there is no matter of right to the entry of default judgment, Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980), default judgment is appropriate where, as here, plaintiff's claim is meritorious, the complaint is factually and legally sufficient, the sum of money at stake is both discernable and moderate, public policy favors decisions on their merits, and there is significant risk of prejudice to plaintiff if judgment is not entered.  See Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986). The material facts appear clear and there is no reasonable possibility defendants' default was due to excusable neglect.  Id.

California Civil Code section 1812.218 provides that "Any purchaser injured by a violation of this title or by the seller's breach of a contract subject to this title or of any obligation arising from the sale or lease of the seller assisted marketing plan may bring any action for recovery of damages.  Judgment shall be entered for actual damages, plus reasonable attorney's fees and costs, but in no case shall the award of damages be less than the amount of the initial payment . . ."[3]

---

[3] Additional remedies are authorized by California Civil Code section 1812.219 to the extent they are provided by "any other statutory or any common law rights," and section 1812.217 provides for fines and imprisonment for willful violations.  Plaintiff's request for

1   Accordingly, default judgment should be entered against defendant Pantheon
2   Holdings, Inc., for actual damages in the amount of $71,400.00, with an award of interest, both
3   prejudgment and postjudgment, of 10% per annum pursuant to Cal. Civ. Code §§ 3287(a)[4] and
4   3289(b).[5]

5   Plaintiff's costs in pursuing this action total $352.33 ($250.00 filing fee and
6   $102.33 process server), are reasonable and should also be awarded.

7   In addition, plaintiff is entitled to "reasonable attorney's fees."  Cal. Civ. Code
8   § 1812.218.  While plaintiff contracted to pay his attorney a one-third contingency fee, which this
9   court finds excessive, plaintiff's counsel has filed an affidavit stating he has expended
10  approximately 20 hours on this matter, excluding time responding to the District Judge's orders
11  regarding counsel's failure timely to file status reports.  The court finds 20 hours a reasonable
12  amount of time devoted to this litigation, and counsel's hourly rate of $250.00 reasonable within
13  this legal community.  Plaintiff should therefore be awarded $5,000.00 attorney's fees.

14  Accordingly, IT IS HEREBY RECOMMENDED that:

15  1. Plaintiff's motion for default judgment against defendant Pantheon Holdings,
16  Inc., filed June 29, 2005, be granted;

17  2.  Plaintiff be awarded damages in the principal amount of $71,400.00, plus
18  prejudgment and postjudgment interest of 10% per annum;

19  3. Plaintiff be awarded costs of $352.33;

---

punitive damages based on fraud should be denied.  Plaintiff relies only on Cal. Civ. Code § 3294, which permits exemplary damages for "the breach of an obligation not arising from contract," inapplicable here.

[4] Cal. Civ. Code § 3287(a) authorizes the award of prejudgment and postjudgment interest in this contract action, and provides in pertinent part: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

[5] Cal. Civ. Code § 3289(b) provides "If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."

1          4.  Plaintiff be awarded attorney's fees in the amount of $5000.00.

2          These findings and recommendations are submitted to the Honorable Garland E. Burrell, Jr., the United States District Judge assigned to this case. 28 U.S.C. § 636(b)(l).  Written objections may be filed within ten days after being served with these findings and recommendations.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 12, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

now6/schappell.mtddefjdgmt.jfm